IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**MARIA CARMEN HERNANDEZ-NIEVES,**

    Plaintiff,

  v.

**UNITED STATES OF AMERICA; JANET NAPOLITANO,** Secretary of Homeland Security; **ERIC HOLDER,** United States Attorney General; **ALEJANDRO MAYORKAS,** USCIS Director; **EVY SAHLI,** Field Director, USCIS Portland Field Office,

    Defendants.

Civil Case No. 09-1390-HU

**OPINION AND ORDER**

Jennifer Rotman
Stephen Manning
Jessica M. Boell
Immigrant Law Group PC
PO Box 40103
Portland, Oregon 97240
    Attorneys for plaintiff

Tony West
Assistant Attorney General, Civil Division
J. Max Weintraub
Senior Litigation Counsel
Stacey I. Young
Trial Attorney
United States Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044

Dwight C. Holton
United States Attorney, District of Oregon
James E. Cox, Jr.
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204
     Attorneys for defendants

HUBEL, Magistrate Judge:

Plaintiff Maria Carmen Hernandez-Nieves, a native and citizen of Mexico, challenges the denial by the United States Citizenship and Immigration Services (USCIS) of her application for permanent resident status. The matter before the court is defendants' (hereinafter referred to collectively as "the government") motion to dismiss all claims on the basis of <u>Morales-Izquierdo v. Department of Homeland Security, et al.</u>, 600 F.3d 1076 (9th Cir. 2010). (Doc. # 19) All parties have consented to all proceedings in this matter including the entry of final judgment by a United States Magistrate Judge, pursuant to 28 USC §636 (c).

## Allegations of Complaint

Ms. Hernandez-Nieves has been married to Jose Daniel Diaz Alduena, a lawful permanent resident of the United States, for more

than 20 years. They have three children who are legal permanent residents. Complaint ¶ 7.

In 2000, Ms. Hernandez-Nieves left Mexico after she was robbed and raped in front of her five year old daughter by assailants who broke into her family's home in Mexicali, Baja California, Mexico. Id. at ¶ 8. Ms. Hernandez-Nieves and her husband reported the crime to the Mexican police, but the assailants were never captured. Id. at ¶ 9. As a result of the burglary and rape, Ms. Hernandez-Nieves experienced panic attacks and acute anxiety. Psychotherapy was not successful. Id. at ¶¶ 10-11. No longer feeling safe in Mexico, Ms. Hernandez-Nieves attempted to enter the United States fraudulently by presenting false documents on June 21, 2000. Id. at ¶ 12. She was ordered removed under section 235(b)(1)(A)(i) of the Immigration and Naturalization Act (INA), 8 U.S.C. § 1225(b)(1)(A)(i) on the same day. Id. at ¶ 12.

In November 2000, Ms. Hernandez-Nieves entered the United States unlawfully in spite of the removal order. Id. at ¶ 13. She now lives in Oregon. Id. On July 22, 2007, Ms. Hernandez-Nieves attempted to regularize her immigration status by seeking permanent resident status under the penalty fee adjustment program, section 245(i) of the INA, 8 U.S.C. § 1255, based on the approved alien relative petition filed by her husband. Id. at ¶¶ 15, 27. On November 1, 2007, she applied for a waiver for misrepresentation under 8 U.S.C. § 1182(i) and for permission to reapply for

admission. Id. at ¶ 27. On January 9, 2009, the USCIS Field Director approved her application to waive the misrepresentation inadmissibility ground. This waived Ms. Hernandez-Nieves's inadmissibility under 8 U.S.C. § 1182(a)(6)(C)(i). Id. at ¶ 28. On June 12, 2009, the Field Director denied Ms. Hernandez-Nieves's application for adjustment of status and denied her application for permission to reapply. Id.

On June 19, 2009, Ms. Hernandez-Nieves administratively appealed the denial of her application for permission to reapply; the appeal was dismissed on November 6, 2009. Id. at ¶ 30.

Ms. Hernandez-Nieves seeks an adjudication of her application for permission to reapply and of her application for adjustment of status, on the ground that the government's denial of her prior applications was unlawful. The government moves to dismiss the case for failure to state a claim, pursuant to Morales-Izquierdo v. Department of Homeland Security et al., 600 F.3d 1076 (9th Cir. 2010). The issue presented by this case is which of two conflicting rules should govern Ms. Hernandez-Nieves's application for permission to reapply.

## Discussion

An alien who enters the United States without inspection can, under some circumstances, seek an "adjustment of status" to that of a legal permanent resident by filing an Application for Adjustment of Status. 8 U.S.C. § 1255(i). To do so, the alien must be

"admissible" into the United States. Id. at (i)(2)(A). Unlawfully reentering the United States after having been removed makes the alien inadmissible. 8 U.S.C. § 1182(a)(9)(C)(i)(II)("[a]ny alien who ... has been ordered removed under section 1225(b)(1) of this title, section 1229a of this title, or any other provision of law, and who enters or attempts to reenter the United States without being admitted is inadmissible.")  The alien's inadmissibility is permanent unless, while residing outside the United States, she receives permission from the Secretary of Homeland Security to reapply for readmission by filling out Form I-212. Morales-Izquierdo, 600 F.3d at 1079; 8 U.S.C. § 1182(a)(9)(C)(iii). The alien cannot obtain such permission until 10 years have elapsed since her last departure from the United States. 8 U.S.C. § 1182(a)(9)(C)(ii).

The penalty fee adjustment program, 8 U.S.C. § 1255(i), provides an exception to the general limitations on manner of entry. "Penalty-fee adjustment of status allows an alien who entered the United States without inspection to pay a fee of $1,000 and to apply for adjustment of status to that of lawful permanent resident." Acosta v. Gonzales, 439 F.3d 550, 553 (9th Cir. 2006).

In Perez-Gonzalez v. Ashcroft, 379 F.3d 783 (9th Cir. 2004), the Ninth Circuit held that a person who was deported and reentered unlawfully was eligible for a *nunc pro tunc* Form I-212 waiver of the 10-year bar to admissibility. Perez-Gonzalez was applicable to

all applications for adjustment of status filed within the Ninth Circuit. In 2006, the Board of Immigration Appeals (BIA) issued a decision in Matter of Torres-Garcia, 23 I & N Dec. 866 (BIA 2006), which directly contradicted Perez-Gonzalez, finding that 8 U.S.C. § 1182(a)(9)(C) did not permit waiver of the 10-year bar. However, the BIA acknowledged that Perez-Gonzalez was controlling in the Ninth Circuit.

In Duran-Gonzales v. DHS, 508 F.3d 1227, 1240-41 (9th Cir. 2007), the Ninth Circuit concluded that because its decision in Perez-Gonzalez rested on an ambiguity in the statutory scheme, the Supreme Court's decision in National Cable & Telecommunications Ass'n v. Brand X Internet Services, 545 U.S. 967 (2005) required it to defer to the BIA's later reasonable interpretation of the statute. Accordingly, the court overruled Perez-Gonzalez, deferring to the BIA's interpretation in Torres-Garcia, and vacated the injunction ordered by the district court. The Field Director applied the rule of Torres-Garcia when he found that Ms. Hernandez-Nieves was inadmissible under § 1182(a)(9)(C)(i)(II) because 10 years had not elapsed since the date of her last departure.

Ms. Hernandez-Nieves asserts that the Perez-Gonzalez rule should govern her application because her Form I-212 was filed on July 22, 2007, before the date Duran-Gonzales was decided, November 30, 2007.

The government counters that the court foreclosed Ms.

Hernandez-Nieves's argument in Morales-Izquierdo, where the court held that Duran-Gonzales applied to all cases that were "currently on direct review." Thus, all aliens who illegally reentered the United States after having been removed, less than 10 years after their last departure from the United States, are ineligible to apply for an adjustment of status. 600 F.3d at 1091.

Ms. Hernandez-Nieves asserts that Morales-Izquierdo was incorrectly decided. The argument does not advance her case in this court, which is without the authority to overrule a decision from the Court of Appeals.

Ms. Hernandez-Nieves also argues that the Court of Appeals panel reviewing the class litigation in Duran-Gonzales v. U.S. Dept. of Homeland Security, No. C06-1411MJP, has not yet considered the issue of whether Morales-Izquierdo will apply to class members, and that she is a class member in the Duran-Gonzales litigation. Ms. Hernandez-Nieves asks the court to hold its decision in abeyance until the Duran-Gonzales panel has had an opportunity to review the retroactivity question for class members.

The government acknowledges that Ms. Hernandez-Nieves is a member of the class certified in Duran-Gonzales, which includes aliens who filed I-212 waiver applications within the jurisdiction of the Ninth Circuit. However, the government argues that Ms. Hernandez-Nieves would have to opt out of the class action to pursue her individual claims here, citing an Eighth Circuit case,

DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1175 (8th Cir. 1995). The government concedes that it has not found a case from this jurisdiction imposing such a requirement.

The DeBoer case is factually distinguishable, primarily on the ground that in DeBoer, the class was mandatory, with no opt-out privilege. Further, the class members seeking to maintain an individual claim had intervened after the court had approved a class settlement, for purposes of appealing the settlement. I do not find the analysis of DeBoer persuasive in the circumstances of this case.

The government acknowledged at oral argument that class members in Duran-Gonzales have been and will continue to be deported. Ms. Hernandez-Nieves requests that the court hold this motion in abeyance until the retroactivity issue of Duran-Gonzales is decided by the Court of Appeals, to prevent the possibility that she will be deported before Duran-Gonzales is decided by the Court of Appeals. At oral argument, the court ordered the government to inform the court of its plans, if any, to deport Ms. Hernandez-Nieves by August 20, 2010. On August 20, 2010, the government filed a notice to the court stating that "at this time," the government has no intention of removing Ms. Hernandez-Nieves, noting that USCIS has not issued her a Notice to Appear and has "no immediate plans to do so." (Doc. # 24).

The government's motion to dismiss for failure to state a claim (doc. # 19) is GRANTED.

IT IS SO ORDERED.

Dated this 19th day ofOctober, 2010.

/s/ Dennis J. Hubel

_____
Dennis James Hubel
United States Magistrate Judge